HEARD NOVEMBER TERM, 1877.

## LAY vs. LAY.

Where an executor makes advances to legatees in unequal proportions, he has the right, after equalizing the payments so as to put all the legatees upon an equal footing, to reimburse himself for such advances out of any surplus of assets that may be in his hands; and if he should die before reimbursing himself, his executor, who, by qualifying as such, has become executor of the first testator, also may make the reimbursement after having equalized the payments.

The proper mode for the distribution and settlement of the residue of an estate, where there had been payments or advances to some of the legatees in unequal proportions and others had released their interest or made assignments thereof to the executor, prescribed.

The executor of a sole executor is the representative not only of his own immediate testator but also of the first testator, and may retain, for the benefit of the estate of the second testator, out of any funds of the first testator that may be in his hand, an amount sufficient to satisfy a claim held by the second estate against the first.

An executor who died in 1863, and who had neglected to make annual returns, *held* not to be entitled to commissions.

BEFORE COOKE, J., AT OCONEE, FEBRUARY, 1876.

This was an action by Archelaus Lay and Josephine Verner against W. A. Lay, executor, and others.

The important facts of the case were as follows:

The action was commenced in February, 1873, for the purpose of obtaining a settlement of the estate of James Lay, deceased, who died in 1860, leaving a last will and testament, by one clause of which he devised and bequeathed the residue of his estate, real and personal, to his "heirs-at-law, to be divided among them in equal shares," and by another appointed his son, Charles Middleton Lay, executor, who, on June 1, 1860, proved the will and qualified as such executor. He left as his heirs-at-law his widow, six children and a grandchild, Josephine Verner, one of the plaintiffs.

The widow, Elizabeth Lay, died in 1864. Charles M. Lay, the executor, died in December, 1863, leaving a will, by which he appointed his son, the defendant, William A. Lay, then a minor, and two other persons his executors. After the death of Charles M. Lay, Jesse Lay and the plaintiff, Archelaus Lay, two of the sons of the testator, sued out letters of administration with the will annexed upon his estate. No one of the executors named in the will of Charles M. Lay qualified thereon until 1866, when William A. Lay, the defendant, alone qualified.

The complaint charged that the defendant, William A. Lay, had a large sum of money in his hands belonging to the estate of the first testator, James Lay; that he was in failing circumstances; that he had made no returns as executor for more than five years, and that he had purchased shares of the legatees for less than their value. It prayed, amongst other things, for the appointment of a Receiver and for an injunction. The injunction was granted and a Referee appointed to take and state the account.

It further appeared that Charles M. Lay had neglected to make returns as executor within twelve months of his death, and that he had made payments to residuary legatees, or some of them, in unequal proportions.

It also further appeared that a note of Calhoun & Lorton for $370, dated 19th September, 1860, payable to C. M. Lay, or bearer, was, after the death of Charles M. Lay, turned over by his widow to Jesse and Archelaus Lay, administrators, as aforesaid, as part of the estate of James Lay, deceased, and was by them delivered to William A. Lay when he assumed the executorship of the said James Lay, and that the note had been collected by the defendant.

The Referee submitted as his report a long and detailed statement of the accounts of the two executors, Charles M. Lay, deceased,

and William A. Lay, to which the defendant, William A. Lay, excepted on the following grounds:

I. Because the Referee erred in not recommending, before any distribution is declared amongst the devisees and legatees, the payment to the estate of C. M. Lay, deceased, of thirteen hundred and thirty-four dollars and sixty-nine cents, with interest thereon from the 15th day of February, A. D. 1875, being the amount, including interest to the date aforesaid, which his report shows C. M. Lay, deceased, by virtue of his executorship, is in advance with the estate of his testator, James Lay, deceased, as well as any other amounts which, upon further examination, shall be found due to the estate of the said C. M. Lay, deceased.

II. Because the Referee erroneously states that three of the legatees, A. Lay, Jesse Lay and Mrs. S. E. Boggs, have, by consent of the other legatees, compromised their interests in the estate, and have taken certain amounts set forth in the report in full of their legacies, when the truth is, and he should have so stated, that Jesse Lay alone, of the three named in the report, made such compromise, and the other devisees and legatees consented thereto. The executor, W. A. Lay, held a note on A. Lay for $2,442.65, dated 7th December, 1864, one-sixth of which, amounting, with the interest thereon, to                                     dollars, was settled to Mrs. Josephine Verner by the said A. Lay, and by him assigned to W. A. Lay, and the note was delivered to A. Lay in consideration of his executing to W. A. Lay an assignment of the interest of himself and Mrs. S. E. Boggs in the estate of James Lay, deceased, and the interest of said A. Lay in the estate of J. M. Lay; and in further consideration of the sum of $181, to be credited on the note, held by the said A. Lay on the estate of C. M. Lay, as paid by William A. Lay; and in further consideration of the assignment of Josephine Verner to the said W. A. Lay of her right, title and interest in so much of the estate of James Lay, deceased, as consists in a note of Mrs. Elizabeth Lay for $1,316.70, dated December 7th, 1864, all of which, except $11.70, is for slaves. "Mrs. Josephine Verner's share of the negro part of said note is hereby relinquished, (the control thereof being given to me by the said Mrs. Verner,) upon condition that the said interest or one-sixth is credited upon the said note, and, to the extent of her share, cancels the same." And also the right, title and interest of Mrs.

Josephine Verner in the note or memorandum of myself herein-before mentioned, and to be delivered to me, amounting to $2,442.65, dated December 7th, 1864, being the one-sixth part thereof, and which said assignment of her share cancels the same; which assignment was duly executed and delivered to W. A. Lay, and operates to vest in John D. Verner, administrator of A. W. Lay, deceased, J. J. Norton and W. C. Keith, assignees of the interest of Jeptha Lay and the estate of C. M. Lay, who did not release their interest in the note of the said A. Lay, the interest of A. Lay and Mrs. S. E. Boggs in the unadministered and undivided estate of James Lay, deceased, and of their interest in the note of Mrs. Elizabeth Lay, and the interest of A. Lay in the estate of J. M. Lay, because the said W. A. Lay, in delivering up said note of A. Lay, gave up property which he held in trust for the said J. D. Verner, administrator as aforesaid, J. J. Norton and W. C. Keith, assignees as aforesaid, and the estate of C. M. Lay, deceased.

Under the foregoing assignment and statement of facts the Referee should have reported—

1. That the note of Mrs. Elizabeth Lay for $1,316.70, with interest thereon from the 7th of December, 1864, except one-sixth of $11.70, with like interest, belonged to J. D. Verner, administrator of the personal estate of A. W. Lay, deceased, W. C. Keith and J. J. Norton, assignees of Jeptha Lay, deceased, and the estate of C. M. Lay, deceased, and should have recommended the assignment of said note to them on their paying to Mrs. Josephine Verner one-sixth of $11.70 and interest as aforesaid.

2. That the remainder of the undivided and unadministered estate of James Lay, deceased, after equalizing the parties, should be divided into six equal parts, one of which belongs to Mrs. Josephine Verner, and the remaining five to be divided equally between J. D. Verner, administrator of the estate of A. W. Lay, deceased, J. J. Norton and W. C. Keith, assignees of Jeptha Lay, deceased, and the estate of C. M. Lay, deceased.

III. Because he did not allow the estate of C. M. Lay, deceased, former executor, credit for necessaries furnished for Mrs. Elizabeth Lay, widow of James Lay, deceased, and returned by said C. M. Lay in his lifetime, amounting to $61.25.

IV. Because he did not allow the estate of C. M. Lay, deceased, former executor, credit for the necessaries furnished by him to Mrs. Elizabeth Lay, widow of James Lay, deceased, and charged on the

account filed by his successor, W. A. Lay, showing condition of estate at time of death of said C. M. Lay, amounting to $132.75.

V. Because he did not allow commissions to C. M. Lay, deceased, on $11,809.53 of the amounts received and returned by him in his lifetime; and,

VI. On $9,508.69 of amounts paid out by him in his lifetime.

VII. Because he did not allow the estate of C. M. Lay, deceased, commissions on the further sums of $186.45 received, and $350.84 paid out by him in his lifetime, and returned by his executor, W. A. Lay.

VIII. Because he did not allow this defendant commissions on amounts received and paid out in 1867, 1869, 1870, 1871, and subsequently.

IX. Because he did not credit the estate of C. M. Lay, deceased, with the note of Calhoun & Lorton for $370, dated 9th September, 1860, turned over by his administratrix to the administrator *de bonis non* of James Lay's estate, and by them appraised and held as part of said estate.

X. Because there is a manifest error in the accounts submitted by the Referee, in this that the aggregate of the balances found due to the legatees and devisees under the will of James Lay, deceased, is $3,632.47 less than the amount found due by the executor, Wm. A. Lay.

The decree of His Honor the Circuit Judge was as follows:

COOKE, J. This case comes up on exceptions to the report of the Referee. After hearing argument, it is ordered and adjudged as follows:

*First.* The first exception of plaintiff, and fifth, sixth, seventh and eighth of the defendants, refer to the subject of commissions. The law in existence at the time of the transactions must govern. The allowance of commissions is not penal, but simply a provision of law which must be applied to transactions which took place whilst the law was in force.

*Second.* The ninth exception of defendants, made for the estate of C. M. Lay, is overruled. W. A. Lay, the executor, is not charged with the note of Lorton & Calhoun properly, for there is no proof that the note payable to C. M. Lay was the property of James Lay. The report in this respect is confirmed.

*Third.* The first exception of defendants claims error in the report in not charging the bulk of the estate in the hands of W. A. Lay, second executor, with amounts claimed to have been overpaid to the different legatees by the first executor, C. M. Lay, deceased. If such advances were made, the legatees who were so advanced must refund them. The report refusing to charge this amount of $1,334.69 upon the estate in the hands of W. A. Lay, executor, is sustained.

*Fourth.* The third and fourth exceptions of defendants, as to the Referee refusing to allow *necessaries furnished* Mrs. Elizabeth Lay in her lifetime, are sustained.

*Fifth.* The second exception of defendant claims that there is error in the report as to the effect of the compromise with Archelaus Lay. It seems that all parties concurred in giving up the note of A. Lay, upon the consideration of A. Lay and Mrs. Boggs relinquishing their shares in the estate; and as the note was the property of the estate, it would seem that the estate (then reduced to four legatees) should have equal benefit from it; Mrs. Josephine Verner only relinquished her interest in two notes, neither of which has been collected or charged to W. A. Lay, executor. And after giving full effect to her agreement, that is to say, in crediting her sixth on the slave note due by Elizabeth Lay, which has not been collected, and giving up the note of A. Lay, she is entitled to a full share of the estate now distributed. This exception is overruled, and the report in this respect confirmed.

*Sixth.* It is ordered that the reports be recommitted to the Referee, to make his report according to the principles of this decree, with leave to report any special matter.

*Seventh.* It appearing that there is a clerical error in the Referee's report in omitting to add the amount found due the estate of James Lay, deceased, by Wm. A. Lay, executor, to the aggregate estate for distribution, (this sum amounting, February 15, 1875, to $6,921.02,) the Referee's report is recommitted for correction in this or any other of a like nature.

The defendant, Wm. A. Lay, appealed on the following grounds:

I. Because His Honor erred in overruling this defendant's first exception to the report of the Referee, and confirming the report, which, after finding the former executor, C. M. Lay, deceased, to

be in advance with the estate $1,334.67, besides interest, did not recommend the payment of that sum to his personal representative before distribution.

II. Because His Honor erred in overruling this defendant's second exception to the Referee's report and decreeing that Mrs. Josephine Verner is entitled to one-fourth of the estate of James Lay, deceased, as it now stands.

III. Because His Honor erred in refusing to allow the first executor, C. M. Lay, commissions on amounts received and paid out by him in his lifetime.

IV. Because His Honor erred in overruling the defendant's ninth exception, and refusing to allow the estate of C. M. Lay, deceased, credit for the note of Calhoun & Lorton for $370 and interest.

*Norton, Keith,* for appellant.

*McGowan & Thompson,* contra.

October 9, 1878. The opinion of the Court was delivered by

HASKELL, A. J. This action was brought by two of the legatees against the executor of the executor of the testator and the other legatees. The executor, while having assets in amount largely over and above all other claims, made payments to the legatees in unequal proportions and in excess of the money which had come to his hands to an amount reported as $1,334.67, and the account thus stood at the time of his death. The defendant, W. A. Lay, is the executor of the first executor, C. M. Lay, and asks that the estate of the first executor be allowed the reimbursement of this amount before further distributions among the legatees. The Judge ruled that such over-payments, if recoverable at all, must be refunded by the legatees to whom it was made. No negligence or misconduct is charged against the first executor. The question is whether the over-payment made by him can be charged against the estate. "In the course of the administration of estates, executors and administrators often pay debts and legacies upon the entire confidence that the assets are sufficient for all purposes. It may turn out, from unexpected occurrences, that there is a deficiency of assets. Under such circumstances they may be entitled to no relief at law, but in a Court of equity, if they have acted with good faith and due caution, will be clearly entitled to it upon the

ground that otherwise they will be innocently subject to an un-just loss from what the law itself deems an accident."—Story's Eq. Jur., § 90. If the first executor had remained alive and received further sums of money, which were received by the subsequent executor, he would have been, in the ordinary *debit and credit* account, duly credited with the amount previously overpaid. He would thus have disbursed the amount received, and could only be called to account for having distributed unequally and thus preferred some of the legatees.

If legacies are for specific amounts and the executor pays one in full, he admits assets to pay all. So if, as here, an estate is to be equally distributed among a number, and the executor pays to one legatee a given amount, he admits his ability to pay to each other legatee the same amount.

This is the general rule, though subject to some exceptions, which it is not necessary to specify here, as they do not apply in this case. If the executor chooses, at his risk, to pay in advance, the legatees have no cause to complain, and he is entitled to reimburse himself out of the next money that comes to hand.—Wms. on Exec., * p. 1245; *Watts* vs. *Watts*, 2 McC. Eq., 78; *Wright* vs. *Wright, ib.*, 183; *Livesey* vs. *Livesey*, 3 Russ. Ch. Ca., 287.

But the executor cannot retain funds from the estate to repay himself until he has equalized the payments to the other legatees, because, by his payment to some, he admitted assets to pay all to that amount, and for that he must account before he can reimburse himself, for it was not in the eye of the law an advancement. If the assets prove sufficient to equalize the payments, then any surplus must be applied to the reimbursement. There is no reason why this equitable right should not be as good when asked by the representative as when by the executor himself.

The second ground of appeal is from the decree of the Circuit Judge—"Mrs. Josephine Verner is entitled to one-fourth of the estate of James Lay as it now stands." The ruling upon this point depends upon the meaning of the agreement signed by Archelaus Lay which is exhibited in the brief. It will be observed that this agreement was entered into more than a year after this action was begun, and is preceded by the title of the cause; that the parties to it are the plaintiffs and the executor the defendant; that it is attested by the attorneys of the opposing parties and is a compromise or adjustment of as much of the case as it comprehends. In

the printed argument for the respondents it is said that Mrs. Verner did not sign the agreement and that it could not affect her rights. But this was corrected in open Court, and the agreement was by all parties admitted to be binding. The only question is, what does it mean? The consideration on the one part is a note held by Wm. A. Lay, as executor of James Lay, against Archelaùs Lay, one of the plaintiffs, together with "all demands which as executor of James Lay, deceased, he holds against Archelaus Lay." To induce the executor to surrender this note and all demands, Archelaus Lay, in addition to having given, as it is said, a receipt in full to W. A. Lay, executor, for his share in the estate of James Lay and J. M. Lay, deceased, proceeds in the following words: "I hereby assign, transfer and release to the said Wm. A. Lay all my right, title and interest in the said estates of James Lay and of J. M. Lay; and also the sum of $181, to be credited on the note held by me on the estate of C. M. Lay, (now in suit,) and to be credited thereon as paid by Wm. A. Lay; and also the right, title and interest of Mrs. S. Emmaline Boggs in the estate of her father, James Lay, (which interest I own); * * * and also the right, title and interest of Mrs. Josephine Verner in the note or memorandum of myself, hereinbefore mentioned, and to be delivered to me, amounting to $2,442.65, dated 7th December, 1864, being the one-sixth part thereof, and which said assignment of her share cancels the same."

The assignment and cancellation of Mrs. Verner's share of the note amounts to this: It is an acknowledgment as if the executor had actually collected the one-sixth part to which she would be entitled (for she cancels that amount on the note) and had credited it on the note and paid it over to her (Mrs. Verner) and taken her assignment as a voucher for the amount. This leaves the executor liable to the estate for the remaining five-sixth parts of the note, and charges Mrs. Verner with this one-sixth in addition to what she had received before.

The further provision of the agreement is as follows: "And I also hereby assign, transfer and deliver all the right, title and interest of Mrs. Josephine Verner in so much of the estate of James Lay as consists in a note of Mrs. Elizabeth Lay for slaves, said note for $1,316.70, dated December 7, A. D. 1864, of which $11.70 are not for slaves. Mrs. Josephine Verner's share of the negro part of the said note is hereby relinquished, (the control thereof

being given to me by the said Mrs. Verner,) *upon condition* that the said interest or one-sixth is credited upon the said note, and, to the extent of her share, cancels the same." The same principle of construction must be applied. The cancellation is equivalent to a collection of the amount which is thereby credited on the note, and the assignment is a voucher which charges the amount against Mrs. Verner as if it had been paid, for she cannot release the estate from a portion of the assets and then draw an equal share from the diminished resources. The executor must be charged, therefore, with having collected one-sixth of this note and be credited as having paid it over to Mrs. Verner. He must be further charged with having received the whole amount of the note which he turned over to Archelaus Lay, for that is payment, and the money on any other demands which the estate of James Lay at that time held against Archelaus. He also is chargeable, as above said, with having received one-sixth of the Elizabeth Lay note. And these sums should be put on the *debit* side of his account, while he must be credited with the sixth of each note as paid to Mrs. Verner, (Josephine Lovingood,) one of the legatees.

We recur now to the grounds of appeal " that the Judge erred in allowing to Mrs. Josephine Verner one-fourth of the estate of James Lay as it now stands." The view as to Mrs. Verner's share being one-sixth, as expressed in the said agreement, is deemed by this Court entirely correct, and that her position was unchanged by the agreement. The legatees were originally seven in number, and were to receive equally the residuary estate. They were Jeptha Lay, A. W. Lay, A. Lay, Jesse Lay, Mrs. S. E. Boggs, Josephine Lovingood (now Mrs. Verner) and C. M. Lay, the first executor. It is agreed that in 1869 Jesse Lay made a final settlement and gave a receipt in full discharging the estate from all liability to him as legatee. All the other legatees except Mrs. Boggs were parties to the transaction, and she makes no objection. He therefore is out of the way, and the executor must account to the remaining six legatees for the balance of the estate.

Some time after this suit was begun the agreement above cited was entered into, and the interests of the legatees, Archelaus and Mrs. Boggs, were assigned for valuable consideration to William A. Lay.

The estate was not released, and there is no evidence that the transaction was fraudulent, or that the purchase by W. A. Lay of

the shares of Archelaus and Mrs. Boggs was for less than their value. It is true that it is alleged in the complaint that W. A. Lay "purchased shares of the legatees for less than their value," but there is no evidence of any such transaction up to that time. In this argument there is an allusion to a certain "receipt in full" at some time previous; but if there was anything wrong in that, it was cured by the act of the parties in this agreement in 1874, which really constituted the only sale of which the Court can take cognizance. This was evidently by way of compromise between the parties litigant, and whoever took part in it is estopped from objecting to the result of their own acts, unless, indeed, the transaction is of such a nature that it is void in law. In a note to Williams on Executors (* p. 1567,) cases were cited to show that "where an executor contracted with legatees for the purchase of their legacies, which were accordingly assigned to a trustee for him in consideration of sums of money less in amount than the legacies, it was admitted that the transaction could not be sustained for the benefit of the executor; and it was also held that the deed of assignment did not operate as a release of the estate, and could not be upheld as against the legatees who executed it for the benefit of their co-legatees."—*Ex parte James,* 8 Ves., 346.

Redfield on the Law of Wills (2 Vol., 885,) and the cases there cited are to the same point. This doctrine seems to be sound, and decides that whatever may be the result of the agreement as between the parties, it cannot affect or change the rights or increase the shares of the other legatees. As to the contract between the parties, its being in the nature of a compromise puts it on a different footing from an ordinary sale. But if it were a mere sale to the executor, it would nevertheless be good so far as this case is concerned, for it is not complained of. "Although a trustee is not precluded from purchasing the property which has been confided to his care from the *cestui que trust,* such transactions are rigorously scrutinized and will be set aside unless they are shown to be entirely fair and for a full and adequate consideration."—Lead. Cas. in Eq., Vol. 2, p. 1228; *McCants* vs. *Bee,* 1 McC. Ch., 383. And strongly to the same point is the case of *Stallings* vs. *Foreman,* (2 Hill Ch., 401,) where the doctrine is discussed, and it is held that an executor may purchase at the sale of the property of his testator, and if he buy for the true value of the goods his purchase is good both in law and equity. We see no distinction in principle,

and this contract, as it stands unimpeached nor charged with fraud, is unquestionably valid.

As was said by Harper, Ch., in *Thompson* vs. *Buckner*, (2 Hill Ch., 500,) "if it was a fraud on his creditors, the deed [assigning interest in an estate] might still be good as between the parties, and none but his creditors could impeach it. If it were obtained by a fraud practiced on McCullough himself, none but himself or his legal representatives could call it in question." It was held in that case that the conveyance to one who afterwards became administrator was a sufficient accounting on his part. So it is in this case so far as relates to Archelaus Lay and Mrs. Boggs, and Mrs. Verner to the extent that she has gone. W. A. Lay, executor, has accounted entirely to the first two, and as assignee represents their interests, and he has accounted to Mrs. Verner to the extent of the two payments on the notes. To ascertain, then, the proportion of the estate, as it now stands, to which each is entitled, it is only necessary to say that, the number of the original legatees of the residuary estate being seven, each was entitled to one-seventh in 1869. Jesse released the estate and surrendered his interest, if he had any, to the remaining six legatees. Since that time each has been entitled to one-sixth. Of these six, W. A. Lay represents three— two as assignee and one as executor of C. M. Lay, who was one of the original legatees, and the funds must be distributed accordingly, subject to the rules which have been already indicated, viz.: First, there having been unequal payments made to the legatees, the first application of the funds in hand must be to the equalization of payments on the six legacies (*Atchison* vs. *Robertson*, 4 Rich. Eq., 39); second, the debt due to the estate of C. M. Lay, executor, must be paid; and, third, if there be then a residue it should be applied equally to all the legacies. As directed in *Whitlock* vs. *Whitlock*, (13 Rich. Eq., 165,) the whole amount of estate must be ascertained—all which the executor and the executor of the executor respectively has received or should properly have received from the rights of property of testator. This amount should be carried to the debits of the respective executors. The investments and disbursements and all other proper matters of discharge must be put to the credit of the executor to whom it pertains. The first executor should be credited with all proper disbursements and with all assets of testator left by him and turned over to the second executor. If there be any balance in favor of the first executor,

he is entitled to that amount as against the legatees, though he would not be as against creditors. If there be a fund in the hands of the present executor, it should be distributed. But it is admitted that this executor is insolvent and in arrears and has wasted the property. This requires that the Court should leave no room for error in the application of the rule as above laid down—to direct the distribution.

The principal defendant, W. A. Lay, is the executor of the sole executor of the testator, which sole executor was also one of the legatees, and W. A. Lay is further the assignee of two other legatees. The executor of a sole executor "is, to all intents and purposes, the executor and representative of the first testator," (1 Wms. on Ex., 207,) and is the representative of both estates, and, in the words of the same text writer, "an executor of an executor is entitled to retain, out of the assets, debts due from the testator either in his own right or as the executor of the deceased executor."— p. 901. "If the same person be the personal representative both of the creditor and the debtor, he may retain out of the effects of which he is possessed as the representative of the debtor to satisfy the debts due to him as the representative of the creditor." Whatever money, therefore, W. A. Lay, executor, has received, and has not otherwise accounted for as either properly disbursed or now on hand, should be credited to him as having been applied, first, to the satisfaction of the [$1,334.67] over-payment by C. M. Lay, and, next, to the respective legacies which he represents as executor of C. M. Lay and as assignee of Archelaus Lay and Mrs. Boggs: and the claim of C. M. Lay, Archelaus Lay and Mrs. Boggs should be charged with this sum, whatever it may be, before they can be entitled to draw anything from the funds in hand or which may subsequently come in. Or, perhaps, in plainer words, W. A. Lay, executor, is creditor by virtue of these four interests of which he became the representative before he rendered his account. When an executor is creditor, he is presumed to retain funds to apply to his own debt, and in the double aspect, as here, of debtor and creditor he cannot claim more until he has accounted for all he has had.

The third ground of appeal is upon the refusal by the Judge to allow the first executor, C. M. Lay, commissions, because he failed to make his return under the Act of 1789: "That if any executor or administrator shall neglect to render such annual accounts he

shall not be entitled to any commissions for his trouble in the management of the said estate, and shall, moreover, be liable to be sued for damages by any person or persons interested in the said estate."

The argument for the appellant is that the statute is penal; that it was repealed in 1872, (Rev. Stat., p. 800,) and that when a statute, penal in its nature, has been repealed, the penalty ceases to operate although the cause had existed prior to the repeal. The first question is, was the Act penal? for, if it were not, and, on the other hand, made the annual account a duty of the office, without which the executor could not earn commissions, it would be clear that the commissions were never earned by C. M. Lay. The question was elaborately argued, and numerous cases cited, from which inferences were drawn from the words and expressions used by the Judges. See also *Black* vs. *Blakely*, 2 McC. Ch., and *Wright* vs. *Wright*, *ib.*, 183. And considerable stress is laid upon the words "forfeit" and "penalty;" but, according to legal acceptance, the difference between the words, unless made so by the context, is not material. "A penal statute is one which imposes a forfeiture or penalty for transgressing its provisions or for doing a thing prohibited."—Potter's Dwarris on Stat., p. 74. None of these cases are decisive, and, indeed, none of them being directly upon the point, there is marked discrepancy in the dispositions toward which they lean. We think, however, that the question did arise and was determined in *Corbin* vs. *Howell*, Bail. Eq., 183, and *Corbin* vs. *Jones*, Rich. Eq. Cas., 52. The cases are identical, and were decided at January and May Terms, 1831. An administrator of a deceased executor rendered the annual account of the intestate and drew the commissions for his estate. It is unquestioned that an administrator of an executor has nothing to do with the estate of the testator, nor can he in any sense perform a duty of the executor as such. It was argued on the appeal that commissions are intended *as a compensation for the several duties* required by law, and unless *all* these duties are performed, commissions are not to be allowed." "That none but the executor or administrator can perform those duties so as to be entitled to commissions, and his administrator is not competent to make a legal return so as to give a right to the commissions." The cases were heard before Chancellor Harper, and he rendered the opinion confirming the circuit decree. It was determined—1. That " it is not a condition precedent to the allowing of commissions that an account shall be rendered, but they are allowed on all sums received

and paid away, subject only to be forfeited if the executor or administrator shall *neglect* to render an account." And, secondly, he says: " Up to the time of his death, if John Howell had thought proper to make a return he would have had commissions for one year preceding; and what John Howell at the time of his death might do, his administrator, representing him, had a right to do afterwards." This latter could not have been said were the annual return the exercise of a function of the office and was for the trouble arising from the discharge of those duties that the executor received compensation. They could not be performed except by the representative of the testator, which the administrator of an executor is not. The word "neglect," in the portion above cited, is italicized in the opinion, and indicates the conclusion at which the Court arrived, viz., that the Act was directed against the person, and imposed a penalty upon him for failure to obey a requirement of the law, and it might as well have been imprisonment or fine as forfeiture of property in the shape of commissions. In *Gee* vs. *Hicks*, (Rich. Eq. Cas., p. 5,) it was held that the administrator was not bound to prove the annual return before being entitled to commissions, but that the neglect must be proven by the adverse party before the commissions could be disallowed. Regarding the statute as penal, and that it has been absolutely repealed, the *State* vs. *Cole*, (2 McC., 1,) *Allen* vs. *Farrow*, (2 Bail., 184,) are the law of the case.

No doctrine of law is better established than that where one commits an offense which is made felony by statute, and then the statute be repealed, he cannot be punished as a felon in respect of that statute.—1 Hawk. P. C., 306, § 10; 1 Hall, 219. And the doctrine applies as well to the imposing and recovery of penalties as to the creating and punishment of felonies. But has the provision in the Act of 1789 been absolutely repealed? It is true that on pages 799–800, Rev. Stat., Chap. CXLVII, the Act of 1789 stands among the list of the Acts repealed. The repealing clause is found on page 768, Rev. Stat., and is as follows: " The following Acts, ordinances and resolves, passed in the several years hereinafter enumerated, have expired, or have been or are hereby expressly repealed, subject to all the provisions of Chapter CXLVI." Chap. CXLVI, Rev. Stat., p. 766, § 3: "The repeal of the Acts and resolves, and parts of Acts and resolves, revised and re-enacted herein, or repugnant to the provisions hereof, shall not revive any

law heretofore repealed or suspended, nor any office heretofore abolished." * * * Section 5: "It shall not affect any penalty or forfeiture incurred before it takes effect, under any of the laws repealed, except that where a punishment, penalty or forfeiture is mitigated by the provisions of the General Statutes such provisions may be extended to any judgment pronounced after said appeal."

The provision of the law on the subject of executors, as passed in the General Statutes, cannot be regarded as a mitigation of the penalty imposed by the Act of 1789. The whole of that portion of the Act was repealed, subject to Section 5, p. 766, and substituted therefor is a provision resembling the Act of 1840, 11 Stat., 112, relative to the annual returns by guardians, receivers and other trustees to the Masters and Commissioners in Equity.

The executor or administrator may be cited by Judge of Probate, and punished for contempt if he refuses or fails to show cause why he has failed to make his return. The Act of 1789 is, therefore, of force in the case, and C. M. Lay is not entitled to commissions when he failed to make his returns.

The fourth and last ground of appeal is upon the exception that the Court "did not credit the estate of C. M. Lay, deceased, with the note of Calhoun & Lorton for $370, dated 9th September, 1860." This note was turned over by the administratrix of C. M. Lay to the administratrix de bonis non, &c., of James Lay, and during the minority of W. A. Lay, executor, and was appraised and held as part of the estate. It was afterwards turned over by the administrators to W. A. Lay as part of the assets, and was collected by him. There is no other evidence about it. It is hard to see the embarrassment. The note represents so much money of the estate invested in that manner, and, as such, passed from hand to hand without objection, and the administrators have been discharged. It cannot be complained of as an investment because it has been collected.

It is the same as if the estate of C. M. Lay had turned over that much cash as part of the assets of estate of James Lay. C. M. Lay must, therefore, be charged with having received such amount, and his estate be credited with having turned it over to the second executor, and thus it is accounted for so far as C. M. Lay is concerned, but remains one of the liabilities of W. A. Lay, who must account for it to the legatees of James.

The case is remanded for further proceedings in accordance with the principles contained in this opinion.    Motion granted.

*Willard,* C. J., and *Haskell,* A. J., concurred.